# UNITED STATES DISTRICT COURT

## Eastern District of Pennsylvania

19-1842-M

In the Matter of the Search of

A gray Dodge Magnum with Pennsylvania license plate KCW1277 (was last registered to a Toyota Rav4 in the name of Jose Santiago) and Vehicle Identification Number 2D4FV47V86H472409 registered to Jose Rodriguez.

Case No. 19-1842-M

## APPLICATION FOR A SEARCH WARRANT

I, <u>Kevin M. Voit</u>, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property: A gray Dodge Magnum with Pennsylvania license plate KCW1277 (was last registered to a Toyota Rav4 in the name of Jose Santiago) and Vehicle Identification Number 2D4FV47V86H472409 registered to Jose Rodriguez, currently in the custody of the United States Postal Inspection Service.

Located in the    Eastern    District of,    Pennsylvania    there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 21 U.S.C. 841 (a)(1), (b)(1)(B), 846 (attempt to possess with the intent to distribute, 500 grams or more of a mixture and substance containing a detectable amount of cocaine)

The application is based on these facts: SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of 30 days (give exact ending date if more than 30 days:) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kevin M. Voit, U.S. Postal Inspector

*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 31, 2019

City and state: Philadelphia, PA

*Judge's signature*

HONORABLE DAVID R. STRAWBRIDGE
U.S. MAGISTRATE JUDGE

*Printed name and title*

## AFFIDAVIT

I, Kevin M. Voit, being duly sworn, states as follows:

## INTRODUCTION

1. I, Kevin M. Voit, am a United States Postal Inspector. I am currently assigned to the United States Postal Inspection Service, Philadelphia Division. I have been employed as a Postal Inspector since April, 2016. Prior to becoming a Postal Inspector, I was employed as a federal agent with the Department of Homeland Security for seven and one half years. I have a Bachelor of Science in Business Administration from Rider University in Lawrenceville, NJ. I have been trained in various aspects of law enforcement, including the investigation of narcotics offenses. As part of my duties as a United States Postal Inspector, I investigate the use of the U.S. Mails and private carriers illegally to transport controlled substances and drug trafficking instrumentalities, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

2. Through my education and experience and that of other agents assisting in this investigation, I have become familiar with the methods that individuals use to traffic narcotics through the U.S. Mail.

3. Based upon my training and experience, I know that drug traffickers often use any means available to them to transport narcotics. One common method of smuggling drugs is to ship narcotics via the United States Mails, including Express Mail parcels used for scheduled delivery, and other overnight carriers. I also know from training and experience that drug dealers will often have keep evidence of their crime close by in the form of documentary evidence of their shipments, associates and location of their

1

proceeds.

4. Based on my training and experience, your affiant also has knowledge of the following common practices utilized by drug traffickers;

   a. Narcotics traffickers often keep currency in their residences and vehicles in order to maintain and finance their ongoing narcotics business;

   b. Narcotics traffickers commonly maintain, in their residences and other locations including their vehicles, firearms and other weapons which they use to protect and secure their product and proceeds from their traffickers;

   c. Narcotics traffickers commonly maintain in their residences and vehicles firearms and other weapons which they use to protect and secure their product and proceeds from their traffickers;

   d. Narcotics traffickers commonly secrete contraband, proceeds of narcotics sales, and records of narcotics transactions in safes and secure locations within their residences, or those of their friends and/or associates, their businesses, vehicles, and/or other locations over which they maintain dominion and control for ready access and to conceal them from law enforcement authorities;

   e. Narcotics traffickers commonly maintain evidence pertaining to obtaining, secreting, transferring, concealing and or expending narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, and other items of value and/or proceeds of drug transactions, as well as books, records, invoices, receipts, records of real estate transactions, bank drafts, cashiers checks, bank checks, safe deposit box keys and money wrappers. These items are maintained by the narcotics traffickers within their residences, businesses, vehicles, or other locations over which they maintain dominion and control;

   f. Narcotics traffickers commonly maintain addresses and/or pager and/or telephone numbers in books or papers which reflect the names, addresses and/or pager and/or telephone numbers of their associates in their trafficking activities;

   g. Narcotics traffickers commonly communicate with their sources of supply, customers and associates via pager and/or cellular telephones;

   h. Narcotics traffickers commonly take or cause to be taken photographs of themselves, their associates, their possessions and their product, and that such photographs are usually maintained in their possession or in their residences, businesses and/or vehicles; that narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents

relating to the transportation, ordering, sale and distribution of controlled substances, and that these documents and records are maintained where the traffickers have ready access to them;

i. Narcotics traffickers often place assets in the names of corporate entities in order to avoid detection of those assets by law enforcement agencies. Even though the assets are in other person's names, the drug traffickers continue to use these assets and exercise dominion and control over them; and

j. Narcotic traffickers may use the internet through their personal computers or hand-held wireless devices to communicate with other traffickers, suppliers, customers, and to order packaging materials and paraphernalia; and that drug traffickers may use facsimile machines to place or receive orders from customers and suppliers and to order organic and packaging materials for the drug activities.

5. This Affidavit is being submitted in support of an application seeking a search warrant for the following properties:

   a. A gray Dodge Magnum with Pennsylvania license plate KCW1277 (was last registered to a Toyota Rav4 in the name of Jose Santiago) and Vehicle Identification Number 2D4FV47V86H472409 registered to Jose Rodriguez.

6. Based on this investigation, your affiant believes that the gray Dodge Magnum contains evidence, fruits, and instrumentalities of crimes against the United States, specifically, in violation of Title 21, United States Code, Sections 841 and 843(b), as more particularly described in "Attachment B" hereto.

7. This affidavit is based upon my personal knowledge, experience and training, and other information developed during the course of this investigation. This affidavit is also based upon information and experience imparted to me by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause and securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that violations of Title 21, United States

3

Code, Sections 841(a)(1) and 843(b), have been committed and that the gray Dodge Magnum contain evidence of these violations and contraband.

## FACTS ESTABLISHING PROBABLE CAUSE

1. On October 22, 2019, the Philadelphia Division of the U.S. Postal Inspection Service intercepted a Priority Mail parcel bearing Priority Mail number 9505 5110 0907 9294 2672 89 (hereinafter referred to as the "Subject Parcel"). The Subject Parcel was mailed from Puerto Rico in a USPS Priority Mail flat rate box on October 21, 2019, and has the following characteristics: Priority Mail No. 9505 5110 0907 9294 2672 89, measuring approximately 12" x 12" x 5.75" and bearing the return name/address "Johanna Cubero, urb. Zeno Gandia 981 Ave. F.J.G., Arecido PR 00612" and the delivery name/address "Luis Hernandez, 5527 N. Marshall St., PhiladelPhia P.A. 19120."

2. According to the United States Postal Service as well as law enforcement database CLEAR, "Johanna Cubero" is not known to associate to the return address. Further, "Luis Hernandez" is not known to associate to the delivery address. From my training and experience, and the experience of other agents, I know that drug dealers who send controlled substances by the mail or other package delivery services, will often use a fictitious return address name and/or a fictitious delivery addressee name when they are shipping parcels containing controlled substances. They use this subterfuge in order to prevent the mailer of the package from being located.

3. On October 23, 2019, the Subject Parcel was exposed to a drug detection canine named "Chase." Chase is handled by Officer Michael Calchi Badge # 167 with the Millville

4

Police Department. Officer Calchi has been with the Millville Police Department since 2009 and he has been a K9 handler since 2012. The Millville Police Department certifies Officer Calchi and K9 Chase on a bi-annual basis, and Officer Calchi and K9 Chase have ongoing maintenance training every month during the year. In October 2019, Officer Calchi and K9 Chase successfully completed the certification and are certified in the detection of the following substances: marijuana/hashish, cocaine hydrochloride/cocaine base, heroin hydrochloride, methamphetamine, and MDMA. Officer Calchi advised Postal Inspectors that Chase alerted positive to the presence of illegal narcotics inside the Subject Parcel.

4. On October 23, 2019, the Honorable Timothy R. Rice, United States Magistrate Judge for the Eastern District of Pennsylvania, issued a federal search warrant to search Priority Mail Priority Parcel bearing Priority Mail Number 9505 5110 0907 9294 2672 89 (the Subject Parcel). Upon authorization of the search warrant, Postal Inspectors opened the Subject Parcel and found it to contain a gift wrapped package covered in newspaper. Inside the gift wrapped package were three heavily wrapped brick shaped objects that were composed of a white powdery substance (suspected cocaine) and when combined weighed a total of approximately three kilograms. The suspected cocaine was field tested and tested positive for the presence of cocaine. The estimated street value of three kilograms of cocaine is approximately $300,000 U.S. dollars.

5. On October 23, 2019, the Honorable Timothy R. Rice, U.S. Magistrate Judge for the Eastern District of Pennsylvania, issued an anticipatory federal search warrant for 5527 N Marshall Street, Philadelphia, PA 19120, and issued a tracking warrant, to allow law

5

enforcement to monitor the location and contents of the Subject Parcel. U.S. Postal Inspectors repackaged the parcel with beepers and GPS tracking devices, and included three rectangular shaped items to give the appearance of three kilograms of cocaine (hereinafter referred to as "the kilograms"). The kilograms were composed of a sham substance and a representative sample off of the original cocaine was placed into one of the sham kilograms. Law enforcement also placed theft detection powder on the outside of the kilograms. This theft detection powder is invisible to the naked eye, but can be seen using an ultraviolet light. Law enforcement uses theft detection powder in order to determine what individual(s) have touched an object.

6. On October 24, 2019, U.S. Postal Inspectors conducted a controlled delivery of the parcel to 5527 N Marshall Street, Philadelphia, PA 19120 (hereinafter referred to as the "Subject Location"). A U.S. Postal Inspector posing undercover as a Letter Carrier (hereinafter referred to as "the UC") delivered the Subject Parcel to the "Subject Location" at approximately 11:04 a.m. An individual later identified as Jose Santiago was standing outside of the front of the Subject Location washing a gray Dodge Magnum. Santiago approached the front door of the Subject Location, opened the door, and instructed the UC to leave the Subject Parcel inside of the Subject Location. Santiago returned to washing the Dodge.

7. The gray Dodge Magnum bore Pennsylvania license plate KCW1277. That license plate was last registered to a Toyota Rav4 in the name of Jose Santiago. The Vehicle Identification Number associated with the gray Dodge Magnum (2D4FV47V86H472409) was registered to a Jose Rodriguez at 4017 Glendale Street,

6

19124. That vehicle is currently in the custody of the United States Postal Inspection Service.

8. Approximately five minutes later, Santiago entered the Subject Location. Moments later, Santiago exited the Subject Location wearing a dark colored backpack, returned to the Dodge, and opened the back door. Once the back door was closed Santiago was no longer wearing the backpack and resumed washing the Dodge.

9. At approximately 11:43 a.m., Santiago took the hose he was using to wash the Dodge and entered the side yard of the Subject Location traveling in the direction of the rear door of the Subject Location.

10. At approximately 12:05 p.m., the beeper transmitter device went into alarm mode indicating the Subject Parcel was opened, exposing the gift wrapped sham bundle of the kilograms. Prior to the beeper going into alarm mode, at approximately 11:10am, an unknown Hispanic male wearing a black hooded jacket and a black backpack exited the Subject Location and traveled in the direction of Olney Avenue, leaving the area.

11. Minutes later, the law enforcement team knocked and announced their presence at the front door of the Subject Location with no response. The law enforcement team made entry and encountered Santiago who immediately surrendered to law enforcement.

12. At approximately 12:10 p.m. Santiago's hands were tested and tested positive for the presence of theft detection powder.

13. At approximately 12:15 p.m. Santiago was read his Miranda Rights and requested to have an attorney present.

14. During the search of the Subject Location the outer box of the Subject Parcel was

7

recovered in the kitchen located in the rear of the Subject Location. A law enforcement officer located outside in the rear of the Subject Location explained that prior to law enforcement making entry through the front door, the officer heard the rear door of the Subject Location open, followed by the sound of an object hitting the ground, and observed Santiago enter the rear door of the Subject Location. The sham bundle of the kilograms, with the gift wrapping paper removed, were recovered on the other side of the fence on the property adjacent to the rear of the Subject Location.

15. During the search of the Subject Location, a 9mm SCCY CPX-1 handgun bearing serial # 041679, loaded with eleven rounds of ammunition, was recovered on a shelf in the bedroom closet that investigators believe is the defendant's bedroom. In the same closet where the handgun was recovered, law enforcement found a back pack that contained several distribution sized bags of white powder (suspected cocaine) and other empty distribution sized bags. Additionally, the bag pack contained powders recognized by law enforcement as a cutting agent for the distribution of cocaine. The quantity of cocaine recovered, in addition to the materials seized from the defendant's bedroom, are all consistent with the intent to distribute.

16. Based on my training and experience, I believe that drug traffickers often use vehicles registered in other person's names to further their drug trafficking activities.

## CONCLUSION

17. As described above, your affiant believes that that the gray Dodge Magnum contains evidence, fruits, and instrumentalities of crimes against the United States, specifically, in violation of Title 21, United States Code, Sections 841 and 843(b), and Title 18,

8

United States Code, Section 924 as more particularly described in "Attachment B" hereto.

18. Accordingly, I respectfully request that the Court issue:

    a.   A Search Warrant for a gray Dodge Magnum with Pennsylvania license plate KCW1277;

*[signature]*
Kevin M. Voit
U.S. Postal Inspector

Subscribed to and sworn
before me this 31st day of October, 2019.

*[signature]*
HONORABLE DAVID R. STRAWBRIDGE
*United States Magistrate Judge*

9

## **ATTACHMENT A**

### **(Premises to be Searched)**

The premises to be searched are as follows:

    a.    A gray Dodge Magnum with Pennsylvania license plate KCW1277 (was last registered to a Toyota Rav4 in the name Jose Santiago) and Vehicle Identification Number 2D4FV47V86H472409 registered to Jose Rodriguez.

## ATTACHMENT B
### (Property to be Seized)

1. Any and all firearms and ammunition.

2. All the records, documents, and materials (including both originals and copies) described below, in whatever form/format and by whatever means such records, documents, and materials, their drafts, or their modifications may have been created or stored, including but not limited to any (a) handmade or written form, (b) photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motions pictures, or photocopies), and mechanical form (such as printing or typing), and (c) electrical, electronic, or magnetic form (such as tape recordings, cassettes, compact discs, or any information on an electronic or magnetic storage device, such as floppy diskettes, hard disks, storage drives, CD-ROMs, DVDs, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, computers, or electronic notebooks, as well as printouts or readouts from any such storage device).

3. Any and all records and documents relating in any way to any and all financial transactions, regardless of the identity of the person(s) involved in the transactions.

4. Any and all records and documents relating in any way to the possession, sale, purchase, transfer, and/or storage of any and all tangible or intangible assets, including but not limited to vehicles, real estate, and jewelry, regardless of the identity of the person(s) involved.

5. Any and all business records, including but not limited to accounts receivable, accounts payable, general ledgers, cash disbursement ledger, check register, employment records, and correspondence, regardless of the identity of the person(s) involved in the transactions.

6. Any and all identification records and documents, including but not limited to birth certificates, state identification cards, social security cards, and driver's licenses.

7. Any and all banking records, including but not limited to monthly savings and checking statements, canceled checks and banking communications, deposit tickets, withdrawal receipts, certificates of deposits, pass-books, money drafts, money orders (blank or endorsed), check cashing logs, wire transfer logs, cashier's checks, bank checks, money orders, safe deposit box keys, safes, money wrappers and wire transfers.

8. Any and all United States currency, money counters and any item used in the counting of currency.

11

9. Any and all cellular telephones and personal data assistants ("PDA's").

10. Evidence of ownership and/or occupancy of the subject premises, including but not limited to utility and telephone bills, addressed envelopes, deeds, rental/lease agreements.

11. Travel documents, including airline tickets, receipts, correspondence.

12. Any and all controlled substances and associated paraphernalia (including, but not limited to: baggies, ties, scales, razor blades, straws, etc.).

13. Any and all firearms and ammunition.

All of which constitute fruits, evidence and/or instrumentalities of violations of Title 21, United States Code, Sections 841 and 846 and Title 18, United States Code, Section 924